

# NUMBER 13-05-00231-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VANSTEEN MARINE SUPPLY, INC., KOPCKE
INTERNATIONAL, U.S.A. INCORPORATED,
CURTIS L. CHRONKHITE, AND RON FAUSETT,                    Appellants,

v.

TWIN CITY FIRE INSURANCE COMPANY
AND HARTFORD FIRE INSURANCE COMPANY,                     Appellees.

On appeal from the 127th District Court of Harris County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Chief Justice Valdez**

In this insurance dispute, appellants, Vansteen Marine Supply, Inc., Kopcke
International, U.S.A., Inc., Curtis L. Chronkhite, and Ron Fausett (collectively "Vansteen"),
challenge a summary judgment rendered in favor of appellees, Twin City Fire Insurance
Company and Hartford Insurance Company (collectively "Hartford"). In two issues,

Vansteen argues that the trial court erred in (1) granting Hartford's summary judgment motion and (2) denying its motion for partial summary judgment. We affirm.

## I. BACKGROUND

### A. The *Skarbovik* Litigation

The suit that gave rise to this dispute stemmed from the termination of Gunnar Skarbovik, former president of Vansteen. Skarbovik was employed by Vansteen under a contract that contained a non-competition clause. Upon termination, Skarbovik sued Vansteen for a judgment declaring the non-competition clause void and sought damages for libel and defamation, both of which were covered by a commercial general liability insurance policy that Vansteen had purchased from Hartford. Vansteen notified Hartford of the suit and retained its regular outside counsel. Hartford tendered a qualified defense by issuing a reservation of rights letter and began paying Vansteen's counsel.

In the course of defending Vansteen, its counsel filed various counterclaims against Skarbovik, which Vansteen's counsel thought were compulsory. In an affidavit, Vansteen's counsel states that the counterclaims were part of an overall defensive strategy to diminish Skarbovik's causes of action against Vansteen and limit Skarbovik's recovery. After the parties completed discovery, they filed cross-motions for summary judgment. The trial court granted Vansteen's summary judgment motion, which defeated Skarbovik's claims and left only Vansteen's counterclaims pending before the trial court. Vansteen's counterclaims were tried before a jury, which rendered a take nothing verdict.

### B. The Present Suit's Factual Background

Upon receiving notice from Vansteen's trial counsel regarding the trial court's

2

granting of Vansteen's summary judgment motion, Florence Snyder, a claims service representative for Hartford, sent Vansteen's counsel a termination letter dated September 24, 1998. The letter stated, "It appears from the clarification of the judge's ruling that there are no longer any causes of action remaining against the insured for us to defend. This will therefore end Hartford's involvement in this case as of the date of the judge's order." Shortly after receiving the termination letter, Vansteen's counsel contacted Snyder regarding the termination letter and the status of the litigation.

Vansteen's counsel averred that, "In response to my assertions concerning Hartford's duties to its insured and my reiteration of my duties to [Vansteen] as its attorney . . . Snyder specifically told me that Hartford would continue providing [Vansteen's] defense." In deposition testimony, Snyder testified that Vansteen's counsel had told her that the claims Vansteen asserted against Skarbovik were purely defensive.

The record contains Hartford's correspondence log. On February 23, 1999, there is an entry of a letter stating that "Hartford will not pay for any active pursuit of [Vansteen's] action against Mr. Skarbovik but would only pay for such items as are geared strictly for the defense in trying to get the summary judgment finalized." The record, however, does not contain the actual letter.

The record does contain copies of two checks issued to Vansteen's counsel for legal services rendered after the initial termination letter. One check is dated May 21, 1999, for $15,995.00, and contains a notation "Attorneys Fees – DOS 02/16***05/16/1999." The other check's date is not legible, but it is for $15,629.00 and contains the notation: "Attorneys Fees – DOS 05/16 – 06/30/1999."

**C.     The Coverage Dispute**

Vansteen sued Hartford for breach of contract, estoppel, waiver, breach of the duty of good faith and fair dealing, and violations of the insurance code and deceptive trade practices act. Hartford answered with a general denial and the affirmative defense that it had fulfilled its contractual obligations to Vansteen. Hartford also alleged that Vansteen had "unclean hands" because it did not sever Skarbovik's claims that had been dismissed by summary judgment from Vansteen's counterclaims against Skarbovik.

Hartford moved for summary judgment, claiming that it: (1) withdrew its defense under a valid reservation of rights; (2) did not breach its contract with the insured; (3) is not estopped from denying liability for attorney's fees expended in the prosecution of Vansteen's counterclaims; (4) did not waive its rights under the terms of the policy; and (5) is not obligated to pay under the theory of quantum meruit. Vansteen filed a cross-motion for partial summary judgment, arguing that Hartford was liable for the entire cost of defense in the underlying suit because: (1) the contract interpretation under the eight corners rule creates a duty to defend; (2) Hartford breached the reservation of rights provisions; (3) Hartford waived or is estopped from asserting its policy defenses; and (4) the theory of quantum meruit applies to Vansteen's situation.

The trial court denied Vansteen's summary judgment motion and granted Hartford's without providing findings of fact or conclusions of law. This appeal ensued.

## II. DISCUSSION

Hartford argues that it withdrew its defense pursuant to the insurance policy's obligations and exclusions clauses. Vansteen argues that Hartford's actions—issuing a reservation of rights letter, followed by a termination letter, and then further followed by paying legal defense fees—created an ambiguous contractual relationship that should be

4

broadly read in favor of coverage. Alternatively, Vansteen asserts equitable claims for estoppel and quantum meruit.

## A.    Standard of Review

On cross-motions for summary judgment, each party bears the burden of establishing it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000): *Shoberg v. Shoberg*, 830 S.W.2d 149, 151-52 (Tex. App.–Houston [14th Dist.] 1992, no writ) (explaining that when both plaintiff and defendant move for summary judgment, each must carry its own burden to conclusively prove all elements of cause of action as matter of law),*see* TEX. R. CIV. P. 166a(c). When one party's motion for summary judgment is granted and the other party's motion is denied, we determine all questions presented to the trial court; we may "reverse the trial court judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant." *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). Thus, we review the summary judgment evidence presented by both parties, determine all questions presented, and render the judgment that the trial court should have rendered or remand the cause if neither party has met its summary judgment burden. *City of Garland*, 22 S.W.3d at 356; *Al's Formal Wear of Houston, Inc. v. Sun*, 869 S.W.2d 442, 444 (Tex. App.–Houston [1st Dist.] 1993, writ denied).

## B.    Hartford's Duty to Defend Under the Insurance Policy

To determine an insurer's duty to defend, we look at the allegations in the pleadings and the insurance policy's language. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*,

5

387 S.W.2d 22, 24 (Tex. 1965). If the pleadings do not allege facts within the scope of the policy's coverage, an insurer does not have a duty to defend. *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994). However, in the event of an ambiguity, we construe the pleadings liberally, resolving any doubt in favor of coverage. *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141; *Heyden Newport Chem. Corp.*, 387 S.W.2d at 26.

We begin our analysis with a review of the pleadings in the *Skarbovik* litigation. Skarbovik sought a judgment declaring that the covenant not to compete that he entered into with Vansteen was unenforceable. He also sought damages for, among other things, breach of oral contract, intentional infliction of emotional distress, fraud, and libel. Vansteen's trial counsel obtained a summary judgment on all of Skarbovik's claims. Thus, the only "live pleadings" when the case was tried to a jury were Vansteen's counterclaims against Skarbovik's for his alleged violation of a non-disclosure agreement and breaches of fiduciary duty.

Next, we examine the insurance policy. The relevant insurance policy provision reads:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result.
>
> * * * *
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under [Supplementary Policies].

The policy clearly creates a duty to defend "against any 'suit' seeking [personal injury or advertising injury damages]." But, the policy excludes any other obligation, sums, acts, or

6

services.

Vansteen argues that the insurance policy's language covers its counterclaims because the counterclaims were "an integral part of [its] defensive strategy." It cites Black's Law Dictionary's definition of "defense" as:

> That which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks. That which is put forward to diminish plaintiff's cause of action or defeat recovery.

BLACK'S LAW DICTIONARY 290 (6th ed. 1991). Using the dictionary definition of "defense" as authority, Vansteen urges us to define Hartford's duty to defend to include its counterclaims, which it argues were aimed at reducing its total liability.

Insurance contracts are subject to the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997); *Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 328 (Tex. App.–Houston [1st Dist.] 1999, pet. denied). When a policy permits only one interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992); *Hanson*, 5 S.W.3d at 328. We must strive to effectuate the policy as the written expression of the parties' intent. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). It is well settled that insurance policies should be construed in favor of the insured; however, this rule does not apply when the term to be construed is unambiguous and susceptible to only one construction. *Devoe v. Great Am. Ins.*, 50 S.W.3d 567, 571 (Tex. App.–Austin 2001, no pet.). In such a case, we give the words in the policy their plain meaning. *Id*.

The plain meaning of the term "defense" does not include the purely offensive claims that Vansteen pursued after its potential liability to Skarbovik had been eliminated

7

by summary judgment. The definition of defense that Vansteen advances implicitly defines a defendant as "the party proceeded against." In this case, Vansteen was not the party proceeded against; it was the plaintiff on all of the claims that were tried to the jury. Accepting Vansteen's definition of defense, in light of the facts in this case, would augment the definition of defense beyond its plain meaning.

Moreover, Vansteen's interpretation of Hartford's duty to defend re-writes the insurance policy that the parties signed. Courts should consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Witkowski v. Brian, Fooshee & Yonge Props.*, 181 S.W.3d 824, 830 (Tex.App.–Austin 2005, no pet.) (stating that the court's objective "is to give effect to the intent expressed in that language by the persons or persons who wrote it . . . ."). Accepting Vansteen's interpretation of Hartford's duty to defend would re-write the policy and render meaningless the clause providing that "[n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under [Supplementary Policies]."

We conclude that Hartford's duty to defend, under the insurance policy in this case, did not obligate it to pay for the prosecution of Vansteen's independent and purely offensive counterclaims. Therefore, the trial court did not err in granting Hartford's summary judgment motion. Vansteen's first issue is overruled.

## C.    Waiver, Estoppel, & Quantum Meruit

In its cross-motion for partial summary judgment, Vansteen argued that Hartford could not withdraw its defense payments because Hartford's payment after its termination letter essentially vitiated the reservation of rights. It argued that Hartford's continued

8

payments after the termination meant that it had assumed Vansteen's defense anew, without any reservation of rights or qualifications, and waived any policy defenses.

In a proper case, estoppel can prevent an insurer from asserting policy defenses. *Employers Cas. Co. v. Tilley*, 496 S.W.2d 552, 560 (Tex. 1973). This can occur when an insurer undertakes defense of a case without qualification or reservation of the right to later deny its obligation to provide indemnity if its insured is found liable. *See Am. Indem. Co. v. Fellbaum*, 114 Tex. 127, 263 S.W. 908, 910 (Tex. 1924); *Farmers Tex. County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520, 521-22 (Tex. Civ. App.–Austin 1980, writ ref'd n.r.e.). It is also generally held that estoppel cannot be used to create insurance coverage where none exists by the terms of the policy. *Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602-03 (Tex. 1988).

An exception to the general rule that estoppel cannot be used to create insurance coverage where none exists, though, is that an insurer undertaking, or continuing, defense of a claim while having knowledge of facts indicating the claim is not covered under its policy, without an effective reservation of rights, may waive, or be estopped from asserting, all policy defenses, including the defense of non-coverage. *Wilkinson*, 601 S.W.2d at 521-22. Vansteen urges us to apply this narrow exception to the instant case and cites to *Wilkinson* and *Providence Washington* as authority for its argument. We find the two cases to be inapplicable.

In *Wilkinson*, Berta Wilkinson, the insured, purchased an auto policy from Farmers Insurance Company for a 1972 Datsun automobile that her son drove. *Wilkinson,* 601 S.W.2d at 520. Wilkinson subsequently sold the Datsun and used the proceeds to

9

purchase a Ford pickup. On January 15, 1973, Clifton Wilkinson, Berta Wilkinson's son, was involved in a car accident with another driver; the other driver sued Clifton Wilkinson for personal injury damages. Farmers provided a defense for two and a half years. On July 11, 1977, Farmers sought a declaratory judgment that it had no obligation to defend Clifton Wilkinson. On July 26, 1977, Farmers sent Clifton Wilkinson two letters; one was a declaration of rights, the other provided an unqualified defense.

The court of appeals liberally construed the two letters in favor of coverage and held that "if an insurer assumes the insured's defense without obtaining a reservation of rights or a non-waiver agreement and with knowledge of the facts indicating non-coverage, all policy defenses, including those of non-coverage, are waived, or the insurer may be estopped from raising them." *Id.* at 521-22 (citing *Pac. Indem. Co. v Acel Delivery Serv., Inc.* 485 F.2d 1169 (5th Cir. 1973); *Ferris v. S. Underwriters*, 109 S.W.2d 223 (Tex. Civ. App.–Austin 1937, writ ref'd)).

In *Providence Washington*, the insured purchased a commercial general liability policy against claims arising between November 16, 1988 through November 16, 1989. *Providence Wash. Ins. Co. v. A & A Coating, Inc.*, 30 S.W.3d 554, 555 (Tex. App.–Texarkana 2000, pet. denied). When the insured was sued, it was tendered a defense based upon a reservation of rights wherein the insurer reserved the right to withdraw its defense "upon reasonable notice." On June 11, 1996, the insured obtained an order declaring that all claims against it occurring before November 24, 1989, were barred by the statute of limitations. The insurer issued a termination letter on February 11, 1997. The court held that a seven month delay in notifying the insured violated the reasonable notice provision in the reservation of rights. The court noted that "[t]he notice should be given at

10

a point when the insured can still take appropriate measures to defend itself." *Id*. at 557 (citing *W. Cas. & Sur. Co. v. Newell Mfg. Co.*, 566 S.W.2d 74, 77 (Tex. App.–San Antonio, 1978, writ ref'd n.r.e.)).

In this case, Hartford issued a reservation of rights letter that unequivocally provided only a qualified defense. The reservation of rights states, "Nothing we have done heretofore, nor anything we do hereafter shall act as a waiver or estoppel to our rights under the policy. We reserve the right to withdraw the defense at any time . . . ." Unlike in *Wilkinson*, Vansteen reserved its rights without any ambiguity. And unlike in *Providence Washington*, the reservation of rights letter does not contain a reasonable notice provision. To the contrary, Hartford's reservation of rights clearly states that it "reserve[s] the right to withdraw the defense at any time."

Vansteen rests much of its waiver argument on Hartford's subsequent payments after its termination letter. It argues that Hartford waived its policy defenses because a new reservation of rights was required. Vansteen, however, has not cited any authority mandating a new reservation of rights under similar circumstances. Therefore, the argument lacks merit.

Finally, Vansteen argues that it is entitled to the *Skarbovik* litigation costs under a theory of quantum meruit. Under the theory of quantum meruit, one who provides valuable services to another may establish that the service's recipient has an implied-in-law obligation to pay when the recipient has reasonable notice that the service provider expects to be paid. *See Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The theory is inapplicable in this case because "[w]hen a valid agreement already

11

addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). We have already held that the insurance policy in question did not provide for payment of Vansteen's independent and offensive claims. To recognize an equitable right to reimbursement would require us to "rewrite the parties' contract [or] add to its language," *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003), which we decline to do.

We conclude that Vansteen did not establish as a matter of law that Hartford waived its policy defense of non-coverage. Thus, the trial court did not err in denying Vansteen's motion for partial summary judgment. Accordingly, Vansteen's second issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

*/s/ ROGELIO VALDEZ*
ROGELIO VALDEZ,
Chief Justice

Memorandum Opinion delivered and filed
this the 6th day of March, 2008.